IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| EDWARD DRAINE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 09-cv-2917 |
| | ) | |
| CHAD BAUMAN, Star No. 15110, CITY OF CHICAGO, and UNKNOWN CHICAGO POLICE OFFICERS, | ) ) ) | Magistrate Judge Jeffrey Cole |
| | ) | |
| Defendants. | ) ) | |

## DEFENDANTS' JOINT MOTION FOR JUDGMENT AS A MATTER OF LAW

Thomas J. Aumann
Assistant Corporation Counsel
City of Chicago, Department of Law
30 North LaSalle Street, Suite 900
Chicago, Illinois 60602
*t* (312) 744-7630
*f* (312) 744-6566
*e* thomas.aumann@cityofchicago.org

*Counsel for Defendant Chad Bauman
and Defendant City of Chicago*

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................................. 1

LEGAL STANDARD ....................................................................................................................... 1

ARGUMENT ..................................................................................................................................... 1

    I.    Judgment as a Matter of Law Must Be Entered on the Unlawful Search Claim Because No Legally Sufficient Evidentiary Basis Has Overcome the Presumption of Validity for Officer Bauman's Complaint for Search Warrant ("CSW")......................................................................................................................2

        A.  No Legally Sufficient Evidentiary Basis Has Established Officer Bauman's CSW Contained False Information to Overcome Its Presumption of Validity..........................................................................................................4

        B.  No Legally Sufficient Evidentiary Basis Has Established Officer Bauman Knowingly or Intentionally Lied or Recklessly Disregarded the Truth to Overcome the CSW's Presumption of Validity. ........................................6

        C.  No Legally Sufficient Evidentiary Basis Has Established an Assumed Misrepresentation Was Necessary for the Determination of Probable Cause to Overcome the CSW's Presumption of Validity. ........................................8

    II.   Judgment as a Matter of Law Must Be Entered on the Willful and Wanton Claim Because No Legally Sufficient Evidentiary Basis Has Established Officer Bauman's Acts or Omissions Were a Proximate Cause. .............................................12

    III.  Judgment as a Matter of Law Must Be Entered on the Indemnity and *Respondeat Superior* Claims Because They Are Derivative Claims Barred by the Tort Immunity Act. .......................................................................................................15

CONCLUSION ................................................................................................................................ 15

CERTIFICATE OF SERVICE ....................................................................................................... 17

## INTRODUCTION

Defendants Chad Bauman ("Officer Bauman") and City of Chicago ("City") (collectively, "Defendants") pursuant to Rule 50(a) of the Federal Rules of Civil Procedure request this Court to enter judgment as a matter of law for the Defendants.

Plaintiff Edward Draine ("Plaintiff") sued the Defendants with four claims: a Section 1983 claim under the Fourth Amendment for unlawful search against Officer Bauman (Count I); a claim of willful and wanton conduct against Officer Bauman (Count II); an indemnity claim against the City (Count III); and a claim under the theory of *respondeat superior* against the City for the claim of willful and wanton conduct (Count IV). As set forth below, Plaintiff has been fully heard on these claims, but there is no legally sufficient evidentiary basis to find in his favor.

## LEGAL STANDARD

Rule 50(a) of the Federal Rules of Civil Procedure authorizes a motion for judgment as a matter of law "when a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." *Alexander v. Mount Sinai Hosp. Med. Ctr.*, 484 F.3d 889, 902 (7th Cir. 2007). The entire record should be considered, with all inferences drawn in favor of the nonmoving party. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). A mere scintilla of evidence is not enough to avoid judgment as a matter of law. *Hall v. Forest River, Inc.*, 536 F.3d 615, 619 (7th Cir. 2008).

## ARGUMENT

Defendants are entitled to judgment as a matter of law because there is no legally sufficient evidentiary basis to find an absence of "probable cause, supported by Oath or affirmation," under the Fourth Amendment and to find a claim of willful and wanton conduct. Specifically in Count I, Plaintiff has not overcome the "presumption of validity" for Officer Bauman's Complaint for Search Warrant under *Franks v. Delaware*, 438 U.S. 154 (1978). In

Count II, Plaintiff has not established that Officer Bauman's acts or omissions were the proximate cause of his alleged injury. Finally, Counts III and IV fail as derivative claims barred by the Tort Immunity Act. 745 Ill. Comp. Stat. Ann. 10/2-109 (West 2008).

I.   **JUDGMENT AS A MATTER OF LAW MUST BE ENTERED ON THE UNLAWFUL SEARCH CLAIM BECAUSE NO LEGALLY SUFFICIENT EVIDENTIARY BASIS HAS OVERCOME THE PRESUMPTION OF VALIDITY FOR OFFICER BAUMAN'S COMPLAINT FOR SEARCH WARRANT ("CSW").**

*Franks v. Delaware* provides the standard to challenge a search warrant in a civil case. *Perlman v. City of Chicago*, 801 F.2d 262, 264 (7th Cir. 1986) (citations omitted). *Franks* found search warrant affidavits carry a presumption of validity, so plaintiffs who challenge presumptively valid affidavits must overcome the standard that *Franks* provides. *Id.* Challenging search warrant affidavits under *Franks* "is tough sledding." *Suarez v. Town of Ogden Dunes*, 581 F.3d 591, 596 (7th Cir. 2009); *accord United States v. Swanson*, 210 F.3d 788, 799 (7th Cir. 2000) ("These elements are hard to prove and thus *Franks* hearings are rarely held.").

Beyond a presumption of validity, *Franks* found that a truthful factual showing of probable cause:

> . . . does not mean "truthful" in the sense that every fact recited in the warrant affidavit is necessarily correct, for probable cause may be founded upon hearsay and upon information received from informants, as well as upon information within the affiant's own knowledge that sometimes must be garnered hastily. But surely it is to be "truthful" in the sense that the information put forth is believed or appropriately accepted by the affiant as true.

*Franks*, 438 U.S. at 165 (citation omitted); *accord Suarez*, 581 F.3d at 596 ("[L]aw enforcement agents are entitled to draw reasonable inferences from the facts before them, based on their training and experience.").

To overcome the *Franks* standard, plaintiffs must point to "specific portions of the warrant affidavit," *United States v. Harris*, 464 F.3d 733, 738 (7th Cir. 2006), and "provide

evidence that the officers knowingly or intentionally or with a reckless disregard for the truth made false statements to the judicial officer and show that the false statements were necessary to the judicial officer's determination that probable cause existed." *Suarez*, 581 F.3d at 596 (internal marks and citations omitted). This standard also applies to any omissions from a search warrant affidavit. *Id.* (citation omitted).

Even then, "the federal supervisory power does not give 'the federal judiciary a 'chancellor's foot' veto over law enforcement practices of which it [does] not approve.'" *United States v. Cortina*, 630 F.2d 1207, 1214 (7th Cir. 1980) (citation omitted). "The essential protection of the warrant requirement of the Fourth Amendment . . . is in requiring that the usual inferences which reasonable men draw from evidence be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime." *Illinois v. Gates*, 462 U.S. 213, 240 (1983) (citation omitted).

So while "[r]easonable minds frequently may differ on the question whether a particular affidavit establishes probable cause, . . . the preference for warrants is most appropriately effectuated by according 'great deference' to a magistrate's determination." *United States v. Leon*, 468 U.S. 897, 914 (1984) (citations omitted).[1] And the magistrate's determination of probable cause is therefore upheld "as long as the issuing judge had a substantial basis for concluding that a search would uncover evidence of wrongdoing." *Junkert v. Massey*, 610 F.3d 364, 367 (7th Cir. 2010) (internal marks and citations omitted) (reviewing *de novo* the district court's denial of a motion for judgment as a matter of law).

---

[1] "Great deference" is accorded in this case because the Court *is sitting* as an after-the-fact, reviewing court of Judge Ford's determination of probable cause. *E.g., United States v. Hodge*, 246 F.3d 301, 305 (3d Cir. 2001) ("The Court sits like a district court and must, like the district court, give great deference to the magistrate judge's probable cause determination."); *Lynch ex rel. Lynch v. City of Mount Vernon*, 567 F.Supp.2d 459, 465 (S.D.N.Y. 2008); *Talada v. City of Martinez*, 656 F.Supp.2d 1147, 1155 (N.D. Cal. 2009); *Smith v. Barber*, 316 F.Supp.2d 992, 1012 (D. Kan. 2004); *Freeland v. Childress*, 177 F.Supp.2d 422, 430 (D. Md. 2001); *Carson v. Lewis*, 35 F.Supp.2d 250, 263 (E.D.N.Y. 1999).

A. **No Legally Sufficient Evidentiary Basis Has Established Officer Bauman's CSW Contained False Information to Overcome Its Presumption of Validity.**

Plaintiff has not shown specific portions of Officer Bauman's CSW contained false information to overcome its presumption of validity. *Suarez*, 581 F.3d at 595-96. "[Affidavits] are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area." *United States v. Ventresca*, 380 U.S. 102, 108 (1965); *accord Gates*, 462 U.S. at 236 (affidavits are not reviewed "in a hypertechnical, rather than a commonsense, manner"); *United States v. Jones*, 208 F.3d 603, 608 (7th Cir. 2000) ("Given the expediency with which officers typically serve a search warrant after it is obtained it is doubtful that they would have had the time to proof read all of the supporting documentation."); *United States v. Leisure*, 844 F.2d 1347, 1354 (8th Cir. 1988) (courts do not "undertake a piecemeal dismemberment of the various paragraphs of the affidavit without attention to its force as a whole").

*Suarez* affirmed the entry of summary judgment by applying *Franks* to a Fourth Amendment claim under Section 1983. 581 F.3d at 595-97. "'All the kids retreated into the home . . . and [we] could see kids hiding behind the couches,'" an officer swore in his application for a warrant. *Id.* at 595. Later in a civil claim for unlawful search, the plaintiffs asserted the officer had lied in his application. *Id.* at 596. They argued it was a lie that "kids could actually be seen hiding behind furniture," and the officer's "formulation that '[a]ll the kids retreated into the home' misleadingly implied that [he] saw the kids go into the home." *Id.*

The Seventh Circuit found the plaintiffs were "nit-picking" and the officer's language reflected a reasonable inference that kids were in the home. *Id.*; *accord id.* at 598 ("Given the presence of the cars outside the home, the teenagers' presence within, as noted, was a reasonable inference for the officers to make."). Thus, the officer's statements were not lies or

- 4 -

misrepresentations—but statements of reasonable inference—which are insufficient to overcome a presumption of validity, and summary judgment was proper. *Id.*

In this case, no evidence shows Officer Bauman's CSW contained lies or misrepresentations to overcome its presumption of validity.[2] As in *Suarez*, any perceived falsity from parsing words, dissecting sentences, or other nit-picking is insufficient. Likewise, Officer Bauman's statements of reasonable inferences cannot defeat the CSW's presumption of validity.

After John Doe described a single family house in relation to certain streets and after he verified 4201 West Wilcox as the house's address with a photograph from the Cook County Assessor, Officer Bauman wrote a reasonable inference, "at 4201 W. Wilcox." Indeed, Officer Bauman recited these steps in his CSW, which is read properly as a whole without a piecemeal dismemberment of its paragraphs.

Officer Bauman also identified the informant as John Doe "for the sake of personal safety," which was Officer Bauman's reasonable belief of the risk to John Doe's personal safety. Even the Seventh Circuit has noted, "not many people want to become police informants in light of the violence within the drug subculture. Drug dealers are not known for treating informers with compassion." *United States v. Bender*, 5 F.3d 267, 270 (7th Cir. 1993). Officer Bauman wrote that he "met" John Doe because—in a commonsense, non-hypertechnical manner—he had met John Doe. When the CSW was subscribed and sworn, Judge Ford had also met John Doe.

Therefore, Defendants are first entitled to judgment as a matter of law on the Section 1983 unlawful search claim because there is no legally sufficient evidentiary basis that Officer Bauman's CSW contained false information to overcome its presumption of validity.

---

[2] As provided below, John Doe's attestations, which later turned out false, do not constitute a *Franks* violation. *See Jones*, 208 F.3d at 607. Defendants further note that John Doe, himself, was an affiant to the CSW, as he had subscribed and swore to the CSW before Judge Ford.

**B.     No Legally Sufficient Evidentiary Basis Has Established Officer Bauman Knowingly or Intentionally Lied or Recklessly Disregarded the Truth to Overcome the CSW's Presumption of Validity.**

Plaintiff has not shown Officer Bauman knowingly or intentionally lied or recklessly disregarded the truth to overcome the CSW's presumption of validity. *See Suarez*, 581 F.3d at 596, 598 (citation omitted). Because "*Franks* makes it clear that affidavits supporting a search warrant are presumed valid," the "defendant *must offer evidence* showing either that the warrant affiant lied or that the warrant affiant recklessly disregarded the truth." *Jones*, 208 F.3d at 607 (emphasis added and citations omitted); *United States v. Roth*, 201 F.3d 888, 892 (7th Cir. 2000) ("*Franks* makes clear that it is the state of mind of the affiant that is at issue.").

*Jones* upheld the denial of a *Franks* hearing, where the defendant argued a search warrant was invalid because a Jane Doe's allegations were inaccurate. *Jones*, 208 F.3d at 607. The defendant specifically claimed that he could not have been with the informant on the date listed in the affidavit because he was in a different city. *Id.* The court rejected the argument, explaining "[t]he fact that a third party lied to the affiant, who in turn included the lies in a warrant affidavit, does not constitute a *Franks* violation. A *Franks* violation occurs only if the affiant knew the third party was lying, or if the affiant proceeded in reckless disregard of the truth." *Id.* (citation and internal marks omitted); *accord Harden v. Peck*, 686 F. Supp. 1254, 1261 n.9 (N.D. Ill. 1988) ("believ[ing] whatever information he received from the Informant . . . might suggest (at most) that [he] acted imprudently, by no stretch of the imagination can they be construed as evidence that [he] deliberately misled the judicial officer in the warrant application").

Separately, *Jones* rejected the argument that recklessness was "incorporating Jane Doe's allegations into his affidavit without first doing more to corroborate them." 208 F.3d at 607. The court found "point[ing] out additional things which could have been done but were not does not in any way detract from what was done." *Id.* The inquiry under *Franks* "must focus on the state

of mind of the warrant affiant." *Id.* (quoting *Franks*, 438 U.S. at 171). Without evidence of the officer's state of mind, "he cannot be said to have recklessly disregarded the truth." *Id.* at 608.

Likewise, *Swanson* upheld the denial of a *Franks* hearing because the evidence showed, at most, negligent behavior. 210 F.3d at 790-91. First, the defendant argued an officer misled the issuing judge by not including all of his information in the affidavit. *Id.* But without evidence that the officer "*intentionally* withheld additional information to trick the judge," the defendant had proven "little more than negligence. And negligence is no basis for convening a *Franks* hearing." *Id.* at 790-91. Next, the defendant argued the officer's failing to verify mortgage information satisfied the *Franks* standard for recklessness. *Id.* at 791. Again, the court disagreed since "any failure to actually verify this point is at most negligence," but "a little negligence—actually even a lot of negligence—does not the need for a *Franks* hearing make." *Id.*

In this case, no evidence shows that Officer Bauman knowingly or intentionally lied or that he recklessly disregarded the truth. Officer Bauman's state of mind is at issue under *Franks*, and his testimony—the only evidence on this issue—established that he did not know John Doe's information was false, let alone that he then proceeded in reckless disregard of the truth.

From *Jones* and *Swanson*, it is insufficient to challenge Officer Bauman's state of mind by pointing out additional things that could have been done. Failing to verify and corroborate may show negligence, at most, which is clearly insufficient under *Swanson*. Still, Officer Bauman chose not to surveil extensively, knowing the skittishness of drug dealers and the perishability of drug houses.[3] His decision was cautious, not reckless.

---

[3] *Cf. Labensky v. County of Nassau*, 6 F. Supp. 2d 161, 173 (E.D.N.Y. 1998) ("Drug dealers are generally very cautious, a characteristic that frequently results in refusals to sell drugs, especially to a new customer.").

As in *Jones*, no evidence shows Officer Bauman held "serious doubts" or had "obvious reasons" to doubt John Doe. Indeed, Officer Bauman had strong reasons to believe John Doe, under the legal standard discussed below, from the corroboration of his information, the personal basis of his information, the amount of detail he provided, the short interval of time between the events he reported and the warrant application, and his personal appearance before the Judge Ford. *See Junkert*, 610 F.3d at 368 (reciting indicia of reliability for informant). Futher, Officer Bauman believed John Doe when he examined photographs of potential "Twans" but did not haphazardly finger someone—anyone—to placate Officer Bauman. People like John Doe build cases against drug dealers.[4] At bottom, no legally sufficient evidentiary basis shows Officer Bauman lied or he recklessly disregarded the truth, and the Defendants are therefore entitled to judgment as a matter of law on the Section 1983 unlawful search claim.

### C. No Legally Sufficient Evidentiary Basis Has Established an Assumed Misrepresentation Was Necessary for the Determination of Probable Cause to Overcome the CSW's Presumption of Validity.

Plaintiff has not shown even an assumed misrepresentation in the CSW was necessary for the determination of probable cause to overcome the CSW's presumption of validity. *See Suarez*, 581 F.3d at 596, 598 (citation omitted); *Haywood v. City of Chicago*, 378 F. 3d 714, 719 (7th Cir. 2004) ("Immaterial falsehoods, even deliberate ones, in an affidavit that is presented to a judge or magistrate in support of a request for the issuance of an arrest or search warrant do not invalidate the warrant should it be issued.").

An affidavit will be sufficient to support probable cause if "based on the totality of the circumstances, the affidavit sets forth sufficient evidence to induce a reasonably prudent person to believe that a search will uncover evidence of a crime." *Junkert*, 610 F.3d at 367-68 (7th Cir.

---

[4] *Cf. United States v. Ewers*, 54 F.3d 419, 422 (7th Cir. 1995) ("[G]iven the nature of the criminal world, testimony about drug amounts is often obtained from less-than-angelic witnesses.").

2010) (internal marks and citations omitted). When an informant is used, "the totality-of-the-circumstances inquiry generally focuses on the informant's reliability, veracity, and basis of knowledge." *Id.* at 368 (internal marks and citations omitted). The inquiry considers: "(1) the degree of police corroboration of the informant's information; (2) whether the information is based on the informant's personal observations; (3) the amount of detail provided by the informant; (4) the interval of time between the events reported by the informant and the warrant application; and (5) whether the informant personally appeared before the warrant-issuing judge." *Id.* But these are not requirements, and "[n]o single issue is dispositive." *United States v. Johnson*, 289 F.3d 1034, 1038 (7th Cir. 2002). And a "deficiency in one factor may be compensated for by a strong showing in another or by some other indication of reliability." *Id.*

Reliability is generally shown if the informant appears before and is questioned under oath by the warrant-issuing judge. *E.g., Jones*, 208 F.3d at 609; *United States v. Wilson*, 169 F.3d 418, 425 (7th Cir. 1999) ("The informant's appearance in court and his testimony under oath subjected the informant to the possibility of prosecution for perjury, had his testimony proved false, and enabled the judge to assess John Doe's credibility and reliability."); *see generally* 2 W. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 3.3(c) (4th ed., 2009-10 suppl.) ("[I]n the rare case where the informant directly serves as the affiant for a search warrant, thereby running the risk of a perjury prosecution should it later appear that he lied, it may fairly be concluded that the information given by the informant under oath is reliable.").

*Jones* upheld the denial of a *Franks* hearing, finding the search warrant affidavit supported probable cause. *Jones*, 208 F.3d at 609. The Seventh Circuit found:

> perhaps most importantly in this case, Jane Doe appeared at the probable cause hearing and was subject to questioning by the issuing judge. "[W]hen a CI accompanies the officer and is available to give testimony before the judge issuing the warrant, his presence adds to

> the reliability of the information used to obtain the warrant, because it provides the judge with an opportunity to 'assess the informant's credibility and allay any concerns he might have had about the veracity of the informant's statements.'"

*Id.* (emphasis added and citations omitted). Additionally, "Jane Doe's information came from her personal observations and was 'specific and detailed'" and the officer "corroborated as much of Jane Doe's information as he could before seeking the search warrant." *Id.* at 609. The officer corroborated her information by driving her past the residence, confirming her description of the residence, and running a background check. *Id.* at 606; *see also United States v. Lloyd*, 71 F.3d 1256, 1259 (7th Cir. 1995) (police drove by residence with CI, confirmed the CI's description of the residence, had CI pick out the defendant's apartment, asked the CI to pick person out of a photo array, and ran criminal record). But "[t]he police need not always take these steps [in *Jones* and *Lloyd*] when trying to corroborate a CI's statements." *United States v. Peck*, 317 F.3d 754, 757 (7th Cir. 2003).

In this case, and most importantly in *Jones*, John Doe appeared before Judge Ford, who questioned John Doe under oath. The importance of the oath binding John Doe and Judge Ford, as in all judicial proceedings, cannot be overestimated.[5] Beyond John Doe being questioned under oath, he also reviewed, signed, and attested to the statements in the CSW. Like Jane Doe in *Jones*, John Doe's reliability, veracity, and basis of knowledge had been tested, and the test satisfied probable cause regardless of an assumed misstatement by Officer Bauman.[6]

---

[5] *See Omychund v. Barker*, 1 Atk. 21, 34 (Ch. 1744) ("No country can subsist a twelve-month where an oath is not thought binding; for the want of it must necessarily dissolve society.").

[6] *Cf. Gates* 462 U.S. at 236 ("[S]o long as the magistrate had a substantial basis for concluding that a search would uncover evidence of wrongdoing, the Fourth Amendment requires no more."); *United States v. Krull*, 480 U.S. 340, 349 (1987) ("It is the judicial officer's responsibility to determine whether probable cause exists to issue a warrant, and, in the ordinary case, police officers cannot be expected to question that determination.").

In addition, John Doe's first-hand, personal information supported his reliability.[7] John Doe provided specific and detailed information about "Twan," uniquely a male black standing 6'5" tall and weighing about 185 pounds. John Doe also detailed his purchase of heroin, during the previous day and on other occasions, at a house identified later as 4201 West Wilcox. Further, John Doe described this house as a single family home and depicted the interior of the home. He personally described how he had seen "Twan" bring a plastic bag containing heroin from the home's rear room. And it is not fatal that John Doe was a new informant. *See Guzman v. City of Chicago*, 565 F.3d 393, 396 (7th Cir. 2009) ("every informant necessarily provides information for the first time").

John Doe also admitted he had used the heroin, which is reliable as a statement against his penal interest. *Johnson*, 289 F.3d at 1036; *see also Peck*, 317 F.3d at 756 (applying *Johnson* for this proposition). Furthermore, the short interval of time between the prior day's purchase and the warrant application supported John Doe's reliability. *See Junkert*, 610 F.3d at 368.

John Doe identified 4201 West Wilcox emphatically as the house where he purchased narcotics from "Twan" during a photo array of homes in the area. Like the officer in *Jones*, Officer Bauman attempted to corroborate information before seeking the search warrant. Without avail, he searched for "Twans" in a criminal history database and provided another photo array to John Doe. Still, John Doe had identified the critical element: the house at 4201 West Wilcox. *See United States v. Reddrick*, 90 F. 3d 1276, 1281 (7th Cir. 1996) (with drug dealers, "[t]he critical element in a reasonable search is not that the owner of the property is suspected of crime but that

---

[7] *Cf. United States v. Perez-Leon*, 757 F. 2d 866, 872 (7th Cir. 1985) (It is "the very nature of drug transactions in that a new buyer is usually checked and cross-checked to the best of his supplier's ability. Drug dealers are not known to call potential clients and solicit their business, rather a dealer who expects to stay out of jail is careful about to whom he sells.")

there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought").

Therefore, Defendants are entitled to judgment as a matter of law on the Section 1983 unlawful search claim because the CSW is presumed of valid and because no evidence shows an assumed misrepresentation was necessary to the determination of probable cause.

II. **JUDGMENT AS A MATTER OF LAW MUST BE ENTERED ON THE WILLFUL AND WANTON CLAIM BECAUSE NO LEGALLY SUFFICIENT EVIDENTIARY BASIS HAS ESTABLISHED OFFICER BAUMAN'S ACTS OR OMISSIONS WERE A PROXIMATE CAUSE.**

To recover damages for "negligence involving willful and wanton conduct, the plaintiff must allege and prove that the defendant owed a duty to the plaintiff, that the defendant breached the duty, and that the breach was the proximate cause of the plaintiff's injury." *Krywin v. Chicago Transit Auth.*, No. 108888, 2010 WL 2780319, at *11 (Ill. July 15, 2010) (citations omitted).[8] When a plaintiff has failed to prove proximate cause, he has failed to sustain his burden of establishing a *prima facie* case and a directed verdict is proper. *Friedman v. Safe Sec. Servs.*, 328 Ill. App. 3d 37, 47, 765 N.E.2d 104, 113 (Ill. App. Ct. 1st Dist. 2002).

"Proximate cause can be established only when there is a 'reasonable certainty' that the defendant's acts caused the injury." *Id.* at 48, 765 N.E.2d at 114 (citations omitted). "It is fundamental that in a negligence action a jury must base its decision on evidence, not on guess or speculation. Liability cannot be predicated upon surmise or conjecture as to the cause of the injury." *Id.* (citations omitted).

For civil actions arising from break-ins, Illinois courts have long refused to concoct proximate cause with a mix of speculation, guess, surmise, or conjecture. Recently, the appellate

---

[8] Exercising supplemental jurisdiction over the claim, this Court must approach the substantive legal issues as would the Illinois Supreme Court. *Houben v. Telular Corp.*, 309 F.3d 1028, 1032 (7th Cir. 2002) (citing *Felder v. Casey*, 487 U.S. 131, 151 (1988)).

court upheld a directed verdict because the plaintiff had failed to prove the proximate cause of her rape was a security company's negligent act or omission. *Id.* at 47-50, 765 N.E.2d at 113-15. Plaintiff alleged the security company had allowed her rapist to enter to her office building and to access her office suite. *Id.* at 48, 765 N.E.2d at 114. The trial and appellate court refused to "fill in the causation gap" with circumstantial evidence as "Plaintiff simply did not know and the rapist was never apprehended." *Id.*[9]

Specifically, "the time and manner by which the intruder gained access to the Garland building, and ultimately [plaintiff's] office, can be determined only by engaging in speculation, surmise, and conjecture." *Id.*; *accord id.* at 49, 765 N.E.2d at 115 ("Because there was no evidence, direct or otherwise, as to how or when the intruder entered the Garland building, a conclusion that Safe Security's deficiencies were linked in any way to Friedman's assault would be purely speculative."). Consequently, plaintiff failed to prove proximate cause and sustain her burden of a *prima facie* case, and a directed verdict was proper. *Id.* at 47, 765 N.E.2d at 113.

Indeed a century ago, Illinois courts found:

> If . . . leaving an outside door unlocked is negligence, and locking it is due care, who is to say what lock or bar shall be sufficient to relieve a party from liability in case of a burglarious entry? Would not some criminals open locks that others would fail to turn? What locks do criminals leave untried and what ones do they fail to break? Who is to establish the line between locks burglar-proof and those not burglar-proof[?] . . . Is the lock on the outside door the only one that burglars do not break or pick? Common knowledge teaches us that they defy all locks, whether on doors, windows, vaults or safes.

*Bradshaw v. Edgar County Nat'l Bank*, 130 Ill. App. 37, 37 (Ill. App. Ct. 3d Dist. 1906) (upholding dismissal because unlocked door was not proximate cause).

---

[9] A home is no different. *See Sanchez v. Wilmette Real Estate & Mgmt. Co.*, No. 1-08-0248, 2010 WL 3290992, at *8 (Ill. App. Ct. 1st Dist. Aug. 19, 2010) ("[N]o evidentiary materials which establish that [defendants] failed to maintain control of the building's master keys or any other instrumentality that was critical to security in the apartment building.").

Likewise in 1938, Illinois courts echoed:

> "[I]t cannot be said that [the repossessor's] leaving of nails out of the window frame in plaintiffs' dwelling was the proximate cause, or a proximate contributing cause, of the loss of plaintiffs' household goods. . . .
>
> It is argued that the negligence of the defendant was the proximate cause or a proximate contributing cause of the loss, because, except for its negligence, plaintiffs' dwelling would not have been invaded. This is pure speculation. Burglars are not necessarily deterred from entering unoccupied houses merely because the windows cannot be raised. There is no evidence which shows, or tends to show, that the unknown person or persons who removed plaintiffs' household goods gained entrance to plaintiffs' dwelling by raising the window, or that the window was unfastened when the unknown person or persons entered, or that they would not have entered if the window had been fastened. The evidence in this case is insufficient to support a finding that any act of the defendant was the proximate cause or a proximate contributing cause of the loss of plaintiffs' household goods."

*Libby, McNeill & Libby v. Illinois Dist. Tel. Co.*, 294 Ill. App. 93, 106-07, 13 N.E.2d 683, 688-89 (Ill. App. Ct. 1st Dist. 1938) (quoting *Strong v. Granite Furniture Co.*, 77 Utah 292, 294 P. 303 (1930), as a matter of judicial *dictum*) (reversing a jury verdict where evidence failed to show the security company's breach was proximate cause of burgled rum).

In this case, Plaintiff alleged that Officer Bauman left the "home unsecured with the front door broken and wide open." (Compl. ¶ 20.) No evidence has shown the front door unsecured or wide open when Officer Bauman left Plaintiff's home. Officer Bauman testified clearly that he pulled the door shut, ensured the knob would not turn, and pushed the door to verify it was secure. Officer Bauman also closed the home's metal security door. While Plaintiff has introduced photographs showing a damaged door and door jamb along with a bill showing repairs, each reveals no evidence *before* burglars or others had repeatedly entered and exited.[10]

---

[10] To go to a jury, Plaintiff cannot rely on the "significance of missing evidence." *Howard v. Wal-Mart Stores*, 160 F.3d 358, 360 (7th Cir. 1998); *see id.* ("A court shouldn't be required to expend its scarce resources of time and effort on a case until the plaintiff has conducted a sufficient.").

Illinois law demands evidence of causation because speculation, guess, surmise, or conjecture cannot fill in the causation gap.

Furthermore, no evidence shows how or when burglars entered Plaintiff's home. The day's commotion may have piqued a neighborhood plundering, regardless of the front door's securement.[11] No reasonable certainty exists, and evidence of causation is not found in speculation, guess, surmise, or conjecture. Thus, no legally sufficient evidentiary basis shows Officer Bauman's acts or omissions were the proximate cause, and Plaintiff has failed to prove his willful and wanton claim. Defendants are therefore entitled to judgment as a matter of law.

### III. JUDGMENT AS A MATTER OF LAW MUST BE ENTERED ON THE INDEMNITY AND *RESPONDEAT SUPERIOR* CLAIMS BECAUSE THEY ARE DERIVATIVE CLAIMS BARRED BY THE TORT IMMUNITY ACT.

Under Section 2-109 of the Local Governmental and Governmental Employees Tort Immunity Act, "[a] local public entity is not liable for any injury resulting from an act or omission of its employee where the employee is not liable." 745 Ill. Comp. Stat. 10/2-109; *Ries v. City of Chicago*, 396 Ill.App.3d 418, 428, 919 N.E.2d 465, 474 (Ill. App. Ct. 1st Dist. 2009). Because Officer Bauman is entitled to judgment as a matter of law on all claims, there is no basis to impose liability against the City on the derivative claims for indemnity and under the theory of *respondeat superior*. Therefore, the City is entitled to judgment as a matter of law.

### CONCLUSION

**WHEREFORE**, for the reasons stated above, Defendants Chad Bauman and City of Chicago respectfully request this Court enter judgment as a matter of law for the Defendants and against Plaintiff.

---

[11] *Cf. United States v. Jackson*, 555 F. 3d 635, 636 (7th Cir. 2009) ("Drug dealers are much more likely to be robbed by suppliers and customers than a householder chosen at random is apt to be the subject of burglary, because the suppliers and customers know that the drug purveyor can't turn to the police for help; this makes dealers especially attractive targets.").

Dated: October 20, 2010

        Respectfully submitted,

        MARA S. GEORGES  
        Corporation Counsel  
        City of Chicago

        By: /s/ Thomas J. Aumann  
            THOMAS J. AUMANN  
            Assistant Corporation Counsel

City of Chicago, Department of Law  
30 North LaSalle Street, Suite 900  
Chicago, Illinois 60602  
*t* (312) 744-7630  
*f* (312) 744-6566  
*e* thomas.aumann@cityofchicago.org

## CERTIFICATE OF SERVICE

I hereby certify that I have caused true and correct copies of the above and foregoing Motion to be served upon all parties of record pursuant to ECF, in accordance with the rules of electronic filing of documents, on this 20th day of October, 2010.

/s/ Thomas J. Aumann
THOMAS J. AUMANN
Assistant Corporation Counsel